TAMANY J. VINSON BENTZ, Bar No. 258600
KRISTINA FERNANDEZ MABRIE, Bar No. 318315
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Tel: 310-595-3000
Fax: 310-595-3300
tamany.bentz@us.dlapiper.com
kristina.fernandezmabrie@us.dlapiper.com

COLIN STEELE (*pro hac vice forthcoming*)
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel: 212-335-4500
Fax: 212-335-4501
colin.steele@us.dlapiper.com

Attorneys for Plaintiff
BGC INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BGC INC., a California public benefit corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KIMBERLY BRYANT, an individual; and DOE NO. 1,<br><br>　　　　　　Defendants. | Case No. 22-4801<br><br>**COMPLAINT**<br><br>1. **Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030** *et seq.*<br><br>2. **Violation of California Computer Data Access and Fraud Act, Cal. Penal Code § 502** *et seq.*<br><br>3. **Conversion**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

Plaintiff BGC INC. ("BGC"), by and through its undersigned attorneys, brings this suit against Defendants Kimberly Bryant ("Bryant"), and DOE No. 1, inclusive. Plaintiffs allege:

# INTRODUCTION

1. BGC is a successful public benefit corporation that advances equal representation for Black women in the science, technology, engineering, and mathematics sectors by teaching them skills in computer programming and technology, helping them hone their leadership skills and building sisterhood. Since 2011, BGC has served approximately 30,000 students and offers programs through its chapters in 14 cities in the US and one in South Africa. BGC also partners with schools all over the country to offer after-school code clubs, facilitate day-long workshops in schools and day-long "hackathons" during weekends. In total, these programs are offered in approximately 25 schools. BGC also facilitates 2-week summer camps in New York City, Oakland, Detroit, and Atlanta, where girls work on a particular project involving coding. For example, this year students are exploring and learning about Black artists while creating self-portraits using Javascript.

2. During the COVID-19 pandemic, BGC began offering virtual programs when programs could not be offered in-person. These events can be accessed by any student with an internet connection. The students for these virtual events register through BGC's website.

3. BGC is also in the process of building out its alumni programming. BGC supports alumni with internship opportunities, interview preparation, and creating a community that allows them to lean on one another. The Alumni Portal is housed on BGC's website, and the website is where alumni of BGC's programs can go for information on an upcoming summit, apply for an upcoming scholarship, and find out about other events for BGC alumni in their age group.

4.  In December 2021, BGC's founder and former Chief Executive Officer, Bryant, was put on administrative leave, with pay, pending an independent investigation into allegations that she had engaged in significant wrongdoing detrimental to the organization.

5.  On August 12, 2022, BGC's Board of Directors held a meeting, during which the independent investigator provided a report regarding the results of the internal investigation. At the same meeting, a majority of the members of the Board voted to terminate Bryant's employment and remove her from BGC's Board of Directors.

6.  On August 11, 2022—the day before the August 12, 2022 Board meeting, which had been scheduled in June—Bryant filed a lawsuit in federal court against BGC, the members of the Special Committee of the Board of Directors charged with overseeing the internal investigation, BGC's interim CEO, Wells Fargo, and certain Wells Fargo executives, alleging, among other things, that donor funds that were maintained in BGC's bank account were her personal funds and that the account was her "sole proprietorship account." Many of the allegations in Bryant's federal lawsuit were copied verbatim from allegations made by her in two lawsuits filed in California state court in January 2022 against BGC and the members of the Special Committee.

7.  Since she was put on paid leave in December, Bryant has sought to harm BGC by (among other things) refusing to relinquish control over BGC's property and assets, including administrative credentials to BGC's website, claiming and treating them as her own despite clear ownership by the organization. Days after her termination, Bryant caused administrative credentials to be used to hijack BGC's website. Specifically, she caused BGC's domains <blackgirlscode.com>, <blackgirlscode.org>, <blackgirlscode.site> and <blackgirlscode.net>, to be re-routed so that they were all directed to <saveblackgirlscode.com>, which displayed a self-serving press release that discloses BGC's confidential and privileged

information. Defendants' conduct has left BGC without a website, violates federal and state statutes, and has caused irreparable harm to BGC's operation and mission in the community.

8. BGC's website is necessary to its operation and mission because, for instance, BGC's website allows Black girls to enroll in programs and services, promotes upcoming events, provides news relevant to its intended beneficiary class, contains information regarding its various chapters and how to get involved, and allows visitors to make donations or volunteer, both of which BGC relies on to operate. Without a functioning website, BGC loses a crucial link between it and intended beneficiary class it serves to the detriment of its mission.

9. Upon information and belief, Bryant and/or DOE No. 1 acting in concert with Bryant caused the BGC website to be taken offline and redirected because only an individual or individuals with administrative ownership and control of the BGC Website could have taken this action, and only the owner of the email account tiedstarling@gmail.com had such ownership and control.

10. As of the date of this filing, BGC's website is nonoperational and inaccessible, and instead redirects to saveblackgirlscode.com. BGC's counsel has contacted Bryant's counsel requesting that they cease this misconduct immediately, but Bryant and her counsel have refused. With each day that passes, BGC suffers, and continues to suffer, immediate and irreparable harm due to the severe impediment that Defendants have caused to its mission and operation, including its ability to receive donations and communicate with the community through the BGC Website.

11. Bryant and DOE No. 1's conduct constitutes, at a minimum, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; violation of the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 *et seq.*; and conversion. DOES Nos. 2 through 10's conduct constitutes, at a minimum, breach of fiduciary duty. BGC seeks a preliminary and permanent injunction restoring

BGC's access to its website and divesting Defendants' administrative control and ownership of the website, compensatory damages, and punitive damages.

## THE PARTIES

12. Plaintiff BGC is a public benefit corporation organized under the laws of California with its principal place of business in Alameda County, California.

13. Defendant Bryant is an individual residing in Alameda County, California.

14. BGC does not know the true name of DOE No. 1, and for that reason, DOE No. 1 is sued under a fictitious name. DOE No. 1 is the owner of the email account tiedstarling@gmail.com, as alleged herein. BGC will seek leave to amend this complaint, if necessary, when the true name and capacity of DOE No. 1 is known. Upon information and belief, DOE No. 1 was responsible in some way for the matters alleged herein and caused harm to BGC.

15. Upon information and belief, each of the Defendants was the agent, principal, employee, representative, or alter ego of the other Defendants and/or acted with one or more of the other Defendants' knowledge, consent and approval, and acted within the course and scope of their agency or representative capacity. Each of the Defendants is therefore responsible for the actions of the other Defendants as alleged herein.

16. Upon information and belief, each of the Defendants was an aider, abettor, or co-conspirator of each of the other Defendants. Each of the Defendants acted within the course and scope of such conspiracy or in the course and scope of a common plan, and each of the Defendants was in some manner responsible for the acts and omissions alleged in these causes of action. Each of the Defendants has ratified and/or approved of the acts and omissions of each of the other Defendants.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the

remaining state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to BGC's federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

18. This Court has personal jurisdiction over Bryant because she is a resident of California.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Bryant resides in this District.  Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because the acts, liabilities, and events giving rise to this action occurred within this District.

## FACTUAL ALLEGATIONS

### BGC's Website Is Critical To Its Mission

20. BGC maintains a website, which is located at various URLs that all direct to the same website:  blackgirlscode.com, blackgirlscode.org, blackgirlscode.net and blackgirlscode.site (collectively "BGC Website").  BGC's ability to communicate through the BGC Website is critical to its service of the community and its intended beneficiary class.  The BGC Website allows girls ages 7 through 17 to enroll in programs and services, advertises upcoming events, provides news relevant to its intended beneficiary class, contains information regarding its various chapters and how to get involved, and allows visitors to make donations and volunteer, both of which BGC relies on to operate.  Without a functioning BGC Website, BGC loses a crucial link between it and the population it serves to the detriment of its mission.

21. The BGC Website is hosted on the servers of a company called Bluehost, which is owned by Newfold.  BGC pays the fees associated with the BGC Website.

22. Since its inception in 2011, the BGC Website has always reflected the BGC name and has always described itself as the official page of BGC.  The BGC Website has only been utilized to promote BGC's mission, share news about BGC,

1 and promote various BGC events.

2     23.    Since its inception, the BGC Website has served as a critical advertising platform for BGC's events, fundraisers, and other promotional activities. BGC's Website often featured pictures, videos, and articles about past BGC events and also provided links to various news articles highlighting BGC's work and successes.

    24.    From its inception in 2011, the BGC Website has always been expressly mission-related and dedicated solely to BGC's mission. For example, starting in 2011, the BGC Website landing page has always depicted various iterations of the BGC logo and the BGC mission statement.

    25.    From 2011 through August 15, 2022, Bryant never used the BGC Website as a personal website to host purely personal information or posts.

    26.    The BGC Website was managed and controlled by BGC. Bryant and BGC employees worked together to strategize as to how best to leverage the BGC Website to promote BGC events and increase community outreach and fundraising. BGC also utilized the BGC Website to garner event participation, obtain donor and participant information.

    27.    The BGC Website, which permitted third parties to send messages to and contact BGC, was also used to communicate with community members interested in BGC events and actual and potential donors interested in helping BGC grow. In response, community members and girls interested in BGC's learning opportunities were provided with answers to their questions about BGC events or directed resources of BGC staff or volunteers who could assist further.

    28.    Over the last ten years, the BGC Website has directly linked to social media accounts owned and operated by BGC, including Instagram, TikTok, YouTube, and Twitter. And the BGC social media accounts all link back to the BGC Website. All of BGC's social media accounts also utilize the "Black Girls Code" trademark. The BGC social media pages, like the BGC Website, were also

created to communicate with BGC intended beneficiaries, volunteers, and current and potential participants in BGC programming. The social media accounts, like the BGC Website, have always been held out as the official BGC social media accounts.

29. BGC has always exercised influence over the BGC Website. From 2011 through 2021, BGC employees were granted access to the WordPress account associated with the BGC Website and regularly maintained, updated, and otherwise managed the content on the BGC Website.

30. Additionally, over the last ten years, BGC has hired and paid third-party contractors to access the BGC Website and assist with the content, branding, and management of the BGC Website. For example, between 2016-2017, an individual named John Warren Hanawalt was retained and paid by BGC to help with reconstructing the BGC Website. And, in or around December 2021, third party vendor Numbered Studios was hired by BGC to help with branding, redesigning, and reconstructing the BGC Website. Numbered Studios was also paid directly for its services by BGC.

**Bryant Refuses to Relinquish Control Over The BGC Website**

31. On information and belief, around the time Bryant founded BGC in or about 2011, she set up an account with Bluehost to administratively control BGC's Website using her then-minor daughter's email account, tiedstarling@gmail.com. Since then, the person or persons who control tiedstarling@gmail.com have had administrative control of the website. Such control grants the individual or individuals the ability to change, delete, or otherwise alter the content, functioning, or existence of the website. Because it is presently unknown to BGC whether Bryant or her daughter (or both) now controls the email account, BGC alleges DOE No. 1 to be the owner of the email account.

32. On or about June 30, 2022, counsel for BGC brought the issue of the domain being tied to the personal email account tiedstarling@gmail.com to the attention of counsel for Bryant, and asked for Bryant's cooperation in transferring

administrative control over the BGC Website to an email address associated with and controlled by BGC. Counsel for BGC followed up with counsel for Bryant again several times, including on or about July 7, 8, 22, and 26, 2022.

33. As of the dates of each of these requests, Bryant was a paid employee of BGC and a member of its Board of Directors and therefore had a duty to cooperate with BGC's requests, make herself available to carry out the mission of BGC during normal business hours, and act in the best interests of the organization. Nonetheless, Bryant refused to fulfill BGC's reasonable request and retained administrative access to the BGC Website and refused to relinquish her access.

**Bryant Removes The BGC Website From The Internet And Then Redirects It To A Press Release Regarding Bryant's Lawsuit Against BGC**

34. On or about August 17, 2022, and just days after Bryant was terminated as CEO and removed from the Board of Directors, the BGC Website was taken offline such that when visitors attempted to access it, they were shown an error message and no website content. Upon information and belief, BGC alleges that Bryant and/or DOE No. 1 caused the BGC Website to be taken offline because only an individual or individuals with administrative ownership and control of the BGC Website could have taken this action. The BGC Website remained offline for the duration of the day.

35. The next day, on or about August 18, 2022, when visitors attempted to access the BGC Website, they were automatically redirected to another website located at www.saveblackgirlscode.com (the "Redirected Website"). The Redirected Website displays a press release dated August 16, 2022, purportedly issued by Bryant's counsel Charles Bonner and James Johnson, a case citation to the Bryant Lawsuit, and a statement rife with false and misleading statements regarding the results of the internal investigation and Bryant's termination, and false and defamatory statements regarding one of BGC's directors:

> saveblackgirlscode.com
>
> # Save Black Girls CODE
>
> Monday, August 16, 2022 FOR IMMEDIATE RELEASE
>
> **LAW OFFICES OF BONNER & BONNER**
> Charles A Bonner, ESQ. SB#85413
> A. Cabral Bonner, ESQ. SB#247528
> 475 Gate Five Road, Suite 211
> Sausalito, CA 94965
> Tel: 415-331-3070
> cabral{at}bonnerlaw.com
>
> **JOHNSON TRIAL LAW**
> James M. Johnston, ESQ. SB#229811
> 100 Wilshire Boulevard, Suite 700
> Santa Monica, CA 90401
> Tel: 424-272-6680
> james{at}johnsontrial.com
>
> **Federal Case Details: Bryant vs. BGC, Wells Fargo, et al - NDCA Case No. 3:22-cv-04643**
>
> ## Black Girls CODE Founder and CEO, Kimberly Bryant, Wrongfully Terminated After Exoneration by Investigation.
>
> OAKLAND, CA - One day after Ms. Kimberly Bryant, Founder and CEO of Black Girls CODE, filed a federal lawsuit alleging wrongful suspension and conflict of interest by board member Heather Hiles, against individual members of a self-designated "special board committee" of BGC, the members terminated Ms. Bryant's position both as a board member of the organization and as the CEO. Ms. Bryant states the termination is an unfortunate culmination of a hostile takeover initiated by Board Member Heather Hiles of the nonprofit that Ms. Bryant created from the ground up, with Hiles' ultimate desire to gain control of over $30 million dollars in donated philanthropic funds.

36. Upon information and belief, Bryant and/or DOE No. 1, without authorization, accessed the Bluehost server on which the BGC Website is hosted and caused the domain name system (DNS) that was affiliated with the BGC Website to be redirected to a website established by Defendants.

37. As of the date of this filing, the BGC Website still automatically redirects to the Redirected Website. As a result of Bryant's conduct, BGC does not have a functioning website and has suffered, and will continue to suffer, irreparable harm until its website is restored and Bryant relinquishes access and administrative ownership and control thereto. Defendants' conduct has been detrimental to BGC, its mission, and its function because Defendants have taken and withheld from BGC a core tool it needs to provide its services to the intended beneficiary class. Defendants' conduct also has caused BGC monetary damages in an amount to be

determined at trial.

## FIRST CAUSE OF ACTION

### Violation of Computer Fraud and Abuse Act,

### 18 U.S.C. § 1030 *et seq.*

### (Against Bryant and DOE No. 1)

38. BGC incorporates the preceding allegations as if fully set forth herein.

39. The Bluehost server on which the BGC Website is hosted is a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2) because it is a data storage facility and/or communications facility used in or affecting interstate commerce or communication.

40. Defendants intentionally accessed the Bluehost server on which the BGC Website is hosted and caused the DNS that was affiliated with the BGC Website to be redirected to a website established by Defendants. Defendants did not have authorization to access the Bluehost server on which the BGC Website is hosted because BGC is the only individual or entity authorized to access and make changes to its own website.

41. As a direct and proximate result of Defendants' conduct, BGC has suffered, and will continue to suffer, loss and damage within the meaning of 18 U.S.C. §1030(e)(8) and (11) in excess of $5,000 and in an amount to be determined at trial, including but not limited to, impairment or damage to data caused by Defendants' period of exclusive control over the BGC Website; cost and harm in connection with investigation and recovery efforts to secure the restoration of the BGC Website and its data; and cost and harm in connection with BGC's interruption of services, such as BGC's inability to receive donations through the BGC Website and inability to effectively communicate with the intended beneficiary class in furtherance of its mission. BGC will continue to suffer such harm until Defendants' access to Bluehost server on which the BGC Website is hosted is preliminarily and permanently enjoined, and BGC's access is restored.

42. The law permits any person who has suffered damage or loss by reason of a violation of the Act to bring a civil action against the violator for compensatory damages and injunctive or other equitable relief.

43. In undertaking the wrongful conduct alleged herein, Defendants acted willfully, intentionally, and with oppression, fraud, and malice in conscious disregard of BGC's rights to the harm of BGC. BGC is therefore entitled to recover punitive damages from Defendants in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**Violation of California Computer Data Access and Fraud Act,**

**Cal. Penal Code § 502** *et seq.*

**(Against Bryant and DOE No. 1)**

44. BGC incorporates the preceding allegations as if fully set forth herein.

45. Defendants violated California Penal Code section 502(c)(1) by knowingly accessing, and without permission, altering, damaging, deleting, destroying, or otherwise using BGC's data in order to wrongfully control or obtain money, property, or data when Defendants accessed the Bluehost server on which the BGC Website is hosted and caused the DNS that was affiliated with the BGC Website to be redirected to a website established by Defendants.

46. Defendants violated California Penal Code section 502(c)(4) by knowingly accessing, and without permission, adding, altering, damaging, deleting, or destroying BGC's data, which resides or exists on Bluehost's servers that host the BGC Website.

47. Defendants violated California Penal Code section 502(c)(5) by knowingly, and without permission, disrupting or causing the disruption of computer services to BGC, the only user authorized to access the Bluehost server on which the BGC Website is hosted.

48. Defendants violated California Penal Code section 502(c)(7) by knowingly, and without permission, accessing or causing to be accessed the

1 Bluehost server on which the BGC Website is hosted.

2 49. Defendants violated California Penal Code section 502(c)(9) by knowingly, and without permission, using BGC's internet domain name in connection with the sending of one or more electronic posts and thereby damaging or causing damage to BGC's data.

50. As a direct and proximate result of Defendants' conduct, BGC has suffered, and will continue to suffer, damage or loss, including but not limited to, impairment or damage to data caused by Defendants' period of exclusive control over the BGC Website; cost and harm in connection with investigation and recovery efforts to secure the restoration of the BGC Website and its data; and cost and harm in connection with BGC's interruption of services, such as BGC's inability to receive donations through the BGC Website and inability to effectively communicate with the community in furtherance of its mission.  BGC will continue to suffer such harm until Defendants' access to Bluehost server on which the BGC Website is hosted is preliminarily and permanently enjoined, and BGC's access is restored.

51. California Penal Code section 502(e)(1) permits the owner or lessee of data who suffers damage or loss by reason of any violation of section 502 to bring a civil action for compensatory damages, injunctive relief or other equitable relief. Section 502(e)(2) further permits the Court in such a civil action to award reasonable attorneys' fees.

52. In undertaking the wrongful conduct alleged herein, Defendants acted willfully, intentionally, and with oppression, fraud, and malice in conscious disregard of BGC's rights to the harm of BGC.  BGC is therefore entitled to recover punitive damages from Defendants in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Conversion

### (Against Bryant and DOE No. 1)

53. BGC incorporates the preceding allegations as if fully set forth herein.

54. At all times relevant herein, BGC owned and had a right to possess the BGC Website.

55. Defendants substantially interfered with the BGC Website by knowingly or intentionally accessing the Bluehost server on which the BGC Website is hosted and causing the DNS that was affiliated with the BGC Website to be redirected to a website established by Defendants; preventing BGC from having access to the BGC Website; and refusing to return BGC's access to the BGC Website after BGC demanded its return.

56. As a direct and proximate result of Defendants' conduct, BGC has suffered damages in an amount to be determined at trial.

57. In undertaking the wrongful conduct alleged herein, Defendants acted willfully, intentionally, and with oppression, fraud, and malice in conscious disregard of BGC's rights to the harm of BGC.  BGC is therefore entitled to recover punitive damages from Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, BGC prays for judgment and relief against Defendants as follows:

1. For judgment in favor of BGC and against Defendants on all causes of action in this Complaint;

2. For an Order directing Defendants to restore access to the BGC Website to BGC;

3. For an Order directing Defendants to relinquish administrative control and ownership of the BGC Website;

4. For an Order preliminarily and permanently enjoining Defendants from

accessing the BGC Website at the administrative level;

5. For an Order awarding BGC damages in an amount to be determined at trial;

6. For punitive and exemplary damages for all causes of action for which such damages are authorized, in an amount to be determined at trial;

7. For reasonable attorneys' fees and costs incurred herein as allowed by law; and

8. For pre-judgment and post-judgment interest at the maximum legal rate, as provided by California law, as applicable, as an element of damages which BGC has suffered as a result of Defendants' wrongful and unlawful acts; and

9. For any other and further relief that the Court may deem just and proper.

## JURY DEMAND

BGC demands a trial by jury.

Dated: August 22, 2022　　　　　　**DLA PIPER LLP (US)**

By: */s/ Tamany Vinson Bentz*
　　TAMANY VINSON BENTZ
　　Attorneys for Plaintiff
　　BGC INC.