UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BGC, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>KIMBERLY BRYANT,<br><br>                    Defendant. | Case No.  22-cv-04801-JSC<br><br>**ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 27 |

Plaintiff, BGC, Inc., alleges that its founder and former CEO, Kimberly Bryant, hijacked the company's website following her removal by the Board of Directors on August 12, 2022.  The Court previously denied BGC's motion for a temporary restraining order (TRO) finding that it had not shown a likelihood of success on the merits of its legal claims as currently pled. (Dkt. No. 23.) BGC thereafter filed an amended complaint and renewed TRO alleging that after her removal Ms. Bryant (1) rerouted the company domain names to a new domain and website, and (2) deleted and altered data related to the BGC website, rendering BGC's website nonfunctional.  (Dkt. Nos. 26, 27.)  After carefully considering the parties' briefs, the relevant legal authority, and the supplemental evidentiary submissions (Dkt. Nos. 31, 32), the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Plaintiff's TRO.  BGC has demonstrated the existence of serious legal questions, faces irreparable harm, and the balance of equities and public interest tip sharply in its favor.

## BACKGROUND

Ms. Bryant founded BGC in 2011 to advance equal representation for Black women in the tech sector.  (First Amended Complaint, Dkt. No. 26 at ¶ 1.)  Since its founding, "BGC has worked to build pathways for Black girls to enter the tech sector as builders and creators by

United States District Court
Northern District of California

introducing them to skills in computer programming and technology" through "one day workshops, enrichment activities, summer camps, and code clubs." (Dkt. No. 27-3, Mohammed Decl. at ¶ 2.) The BGC website, which was located at the domains names <blackgirlscode.com>, <blackgirlscode.org>, <blackgirlscode.site> and <blackgirlscode.net>, (hereafter "the original BGC domain names"), is "integral to its operation and mission." (Dkt. No. 26 at ¶¶ 2, 12.) The website is used to allow "Black girls to enroll in programs and services, promotes upcoming events, provides news relevant to its intended beneficiary class, contains information regarding its various chapters and how to get involved, and allows visitors to make donations or volunteer, both of which BGC relies on to operate." (*Id*. at ¶ 12.) In addition, over the past ten years, the original BGC domain names, which "utilize BGC's Registered Trademark, have played an important role in building and running the BGC Website," and "growing and maintaining BGC's brand identity and online presence, and facilitating interactions with the community, intended beneficiaries, and donors." (*Id*. at ¶ 14.)

Ms. Bryant registered the original BGC domain names with Register.com in 2011 and shortly thereafter launched "the first iteration of the BGC Website." (*Id.* at ¶¶ 25, 27.) She incorporated BGC the following year. (*Id.* at ¶ 26.) Since March 25, 2011, the original "BGC Domain Names (blackgirlscode.com, blackgirlscode.org, and blackgirlscode.net) have only been used to host the BGC Website." (*Id*. at ¶ 28.) "The BGC Website has always reflected the BGC name, logo, and mission statement, and has always exclusively described itself as the official page of BGC." (*Id*. at ¶ 29.)

BGC alleges that on August 17, 2022, Ms. Bryant logged into BGC's Bluehost.com account (Bluehost is the web hosting server BGC used to host the BGC website) and "altered data and deleted two user accounts from the system which caused substantial damages to the BGC Website." (*Id*. at 9.) Further, "[i]mmediately after deleting data in BGC's Bluehost account, Bryant caused BGC's Domain Names, which are hosted on Register.com, to be re-routed so that they directed to Bryant's own website located at <saveblackgirlscode.com>." (*Id.* at ¶ 10.)

On August 22, 2022, BGC filed this action alleging claims for conversion, and violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and the California Computer Data

1   Access and Fraud Act (CCDAFA), Cal. Penal Code § 502.  (Dkt. No. 1 at ¶¶ 38-57.)   The

2   following day, BGC filed a TRO.  After briefing and a hearing, the Court denied the TRO because

3   BGC had not shown a likelihood of success on the merits of the claims as they were pled. (Dkt.

4   No. 23.)  The Court, however, granted BGC leave to file an amended complaint to allege claims

5   based on the evidence developed after the TRO was filed.

6          BGC has now filed a First Amended Complaint pleading claims for conversion, violation

7   of the CFAA, and violation of the CCDAFA based on allegations that Ms. Bryant (1) intentionally

8   accessed BGC's Bluehost server and without permission altered and/or deleted critical data

9   associated with BGC's website, (Dkt. No. 26 at ¶¶ 64, 71, 81), and (2) logged into BGC's

10  Register.com account and rerouted the original BGC domain names to her own website, (*Id*. at ¶¶

11  65, 72, 86).  Plaintiff filed a renewed TRO with its First Amended Complaint.  (Dkt. No. 27.)  The

12  Court directed Ms. Bryant to file a response. (Dkt. No. 28.)  Upon receipt of Ms. Bryant's

13  response, the Court requested further evidence on the question of irreparable harm.  (Dkt. No. 30.)

14  Both parties submitted supplemental declarations in response to the Court's Order.  (Dkt. Nos. 31,

15  32.)

16                                    **DISCUSSION**

17          The standard for issuing a TRO is identical to the standard for a preliminary injunction.

18  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A

19  court considers four factors before granting preliminary relief: (1) whether the applicant is likely

20  to succeed on the merits of the action; (2) whether the applicant is likely to suffer irreparable harm

21  in the absence of preliminary relief; (3) whether the balance of the equities tip in the applicant's

22  favor; and (4) that an injunction is in the public interest. *Doe v. Reed*, 586 F.3d 671, 676 (9th Cir.

23  2009) (quoting *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)).  An adequate

24  showing of irreparable harm is the "single most important prerequisite for the issuance of a

25  [TRO]." *Universal Semiconductor, Inc. v. Tuoi Vo*, No. 5:16-CV-04778-EJD, 2016 WL 9211685,

26  at *2 (N.D. Cal. Nov. 29, 2016) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d

27  Cir. 2005)).  A TRO is an "extraordinary remedy that may only be awarded upon a clear showing

28  that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

United States District Court
Northern District of California

1      BGC contends that a TRO is necessary to avoid irreparable injury.  While BGC has

2  launched a new website using the domain name www.wearebgc.com, it insists that "[w]ithout the

3  ability to utilize [the original] BGC's Domain Names – which are well established and known in

4  the community, have built up over a decade of good will, Google search priority, and 'search

5  engine optimization' or 'SEO' – the community, beneficiary class, and BGC donors cannot easily

6  find BGC on the internet."  (Dkt. No. 26 at ¶ 15.)   BGC thus insists that unless the original BGC

7  domain names are rerouted to BGC's new website, members of the public will not be able find

8  BGC's new website and enroll in BGC programs, apply for scholarships, learn about events,

9  volunteer, make donations, or learn about BGC and its chapters.  (Dkt. No. 27-3, Mohammed Dec.

10  at ¶¶ 4-6.)

11      It is undisputed that Defendant has rerouted the original BGC domain names to her own

12  website.  (Dkt. No. 13-1 at ¶ 15.)  It is also undisputed that when you search for "black girls code"

13  on Google, the new BGC website does not come up in the first 15 pages of search results.[1]  (Dkt.

14  No. 31 at ¶¶ 3-4.)  Given this evidence, BGC has met its burden of demonstrating a likelihood of

15  irreparable harm absent return of the original BGC domain names.  As Ms. Bryant concedes, "if a

16  member of the public wants information about BGC, they simply type 'black girls code' into any

17  search engine and immediately engage with many of BGC's online presences."  (Dkt. No. 29 at 9.)

18  The evidence shows, however, that if a member of the public types "black girls code" into Google,

19  they are not able to "immediately engage with many of BGC's online presences."  (*Id.*)  If

20  members of the public cannot find BGC, it will lose goodwill, the ability to recruit girls and

21  volunteers to its programs, and the ability to fulfill its mission.  *See Rent-A-Ctr., Inc. v. Canyon*

22  *Television & Appliance Rental*, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (finding that while

23  "economic injury alone does not support a finding of irreparable harm,…intangible injuries, such

24  as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm").

25      This evidence also shows that balance of hardships and public interest tip sharply in

26

27

28

---

[1] Ms. Bryant does not dispute that the new website does not appear in Google search results; instead, she argues that BGC's social media profiles on Instagram and Facebook appear. (Dkt. No. 32.)  This result does not eliminate the harm from the website not appearing as not everyone uses social media.

United States District Court
Northern District of California

1   BGC's favor.  BGC mission is to "build pathways for Black girls to enter the tech sector as

2   builders and creators by introducing them to skills in computer programming and technology" and

3   to this end offers "workshops, enrichment activities, summer camps, and code clubs." (*Id.*)  Ms.

4   Bryant, for her part, has not identified any equities that weigh in her favor.  In fact, she concedes

5   that the Court's analysis in its order on Plaintiff's first TRO finding that the equities sharply

6   weighed in BGC's favor was "appropriate" given concerns that BGC could not "solicit donations

7   and engage with the general public." (Dkt. No. 29 at 17.)  Because these concerns remain given

8   that a Google search for "black girls code" does not direct members of the public to BGC's new

9   website, the Court's initial finding that the equities sharply favor BGC remains the same.

10      Finally, BGC has shown the existence of serious legal questions.  The question of who

11  owns the original BGC domain names presents a novel legal issue that this Court will have to

12  decide.  While the Ninth Circuit has held that domain name registrants "have property rights in

13  their domain names," *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003), neither party has

14  cited a case involving the issue of domain name ownership where the original domain name

15  registrant formed a company after purchasing the domain name and the domain name was only

16  ever used to host the company's website and information, including the company's registered

17  trademark, and not the registrant's personal information or content.  This novel question presents a

18  serious legal issue that is a predicate to each of Plaintiff's claims for relief.  *See Romero v. Securus*

19  *Techs., Inc.*, 383 F. Supp. 3d 1069, 1074 (S.D. Cal. 2019) ("District courts in this circuit often find

20  that serious legal questions are presented when novel issues or matters of first impression are

21  raised" and collecting cases).

22      In sum, the Court finds that the extraordinary remedy of a TRO is appropriate given the

23  likelihood of irreparable harm to BGC, the balance of equities and public interest tip sharply in

24  BGC's favor, and there are serious legal questions underlying Plaintiff's conversion, CFAA, and

25  CCDAFA claims.

26                                      **CONCLUSION**

27      For the reasons stated above, the Court GRANTS BGC's TRO.   By 5:00 p.m. Friday,

28  September 23, 2022, Defendant is ORDERED to:

United States District Court
Northern District of California

5

1. Direct the DNS configuration to point the original BGC domain names to the new BGC website (www.wearebgc.org) and ensure the new BGC website remains accessible through the original BGC domain names unless and until ordered otherwise;

2. Provide Defendant's administrative credentials to the Register.com account to BGC to facilitate the operation of the original BGC domain names and website; and

3. Provide BGC any other administrative credentials to any accounts necessary in the operation of the original BGC domain names.

4. Defendant may not alter the DNS configuration or content of the original BGC domain names and website.

No bond is required. *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("the bond amount may be zero if there is no evidence the party will suffer damages from the injunction").

The Court sets a status conference for **September 28, 2022 at 2:00 p.m**. via Zoom video. The parties should be prepared to discuss next steps, including preliminary injunction briefing or whether preliminary injunction proceedings should be combined with trial on the merits. *See* Fed. R. Civ. P. 65(a)(2).  ADR options will also be addressed.  Given the short time frame, no joint case management conference statement is required.

**IT IS SO ORDERED.**

Dated: September 23, 2022

JACQUELINE SCOTT CORLEY
United States District Judge