UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BGC, INC.,

    Plaintiff,

v.

KIMBERLY BRYANT,

    Defendant.

Case No. 22-cv-04801-JSC

**ORDER RE: EMERGENCY MOTION TO ENFORCE TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 54

Plaintiff requests an order modifying the temporary restraining order ("TRO") entered in this case. (Dkt. Nos. 28, 39.)[1] The Court previously amended the TRO to state:

> M[s]. Bryant is not required to provide Plaintiff with her administrative credentials for Register.com; however, Ms. Bryant is prohibited from using her Register.com credentials, or allowing anyone else to use her Register.com credentials, to take any action with respect to the domain names subject to the Court's order.

(Dkt. No. 39.)[2] Plaintiff seeks a modification of that order (1) granting Plaintiff access to a separate and new Register.com account, and (2) ordering Defendant to transfer the BGC domain names to that new Register.com account. In the alternative, Plaintiff seeks an Order requiring Defendant to redirect certain "MX Records" back to BGC's email server. (*Id.*)

After hearing argument from both parties on April 3, 2023, the Court amends the TRO as follows:

> Plaintiff shall create a new Register.com account to be controlled jointly by Plaintiff and Defendant. Defendant shall immediately transfer the relevant BGC domain names to that joint account where they will remain until further order of the Court. Neither party may make changes to the domain names or move the domain names to another account without prior permission from the Court. This Order does not prohibit BGC from making changes necessary to resolve the email issue.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] The parties stipulated the amended TRO would remain in place during the litigation and preliminary injunction proceedings were not warranted. (Dkt. No. 46.)

**BACKGROUND**

Because the parties are familiar with the facts, the Court addresses only recent developments. (*See* Dkt. No. 28.)

**I.    Recent Developments**

    **A.    Email Access**

On March 29, 2023, Plaintiff lost the ability to receive email communications. (Dkt. No. 54-2 ¶ 8.) Plaintiff uses Google Workspace to host their email services. (*Id.* ¶ 9.) But emails sent to "@blackgirlscode.org" accounts returned an error from an email service provider known as "Vade." (*Id.*) An IT investigation concluded the "MX Records" associated with blackgirlscode.org had recently been changed. (*Id.* ¶ 10.) MX Records tell mail servers where to deliver emails for certain domain names. (*Id.*) Prior to the change, the MX Records for BGC accounts were set to Google's servers (e.g., "aspmx.l.google.com"). (*Id.*) But the values had been reset to Vade servers: "mx001.register.xion.oxcs.net" and "mx002.register.xion.oxcs.net." (*Id.*) BGC fears "[o]ther supporting DNS records were likely changed" as well. (*Id.*) As a result, BGC has been unable to receive any inbound email and has concerns its new mail is being redirected to unknown addresses. (*Id.* ¶ 11.)

MX Records and DNS settings are accessible and alterable through the domain names' Register.com account. (*Id.* ¶ 10.) To repair this issue, Plaintiff needs either direct access to the Register.com account for the BGC domain or Defendant's assistance in directing the records back to Google. (*Id.* ¶ 12.) However, per the previous TRO in this case, Defendant controls the Register.com account and Plaintiff lacks access to that account. (Dkt. No. 39.)

    **B.    The Parties' Communication**

Plaintiff's counsel wrote to Defendant's counsel on March 29, 2023 to inform Defendant of the urgent email access crisis. (Dkt. No. 54-5 ¶¶ 4-5.) Plaintiff's counsel expressed concerns Defendant had accessed the MX Records through the Register.com account and informed Defendant's counsel that Plaintiff would seek redress on March 30, 2023. (*Id.* ¶ 5.) A paralegal for Defendant's counsel replied on March 30, 2023, that Defendant's counsel was in trial and had limited availability to respond until that afternoon. (*Id.* ¶ 7.) As of 1:00 p.m. on March 31, 2023,

1    Defendant had not responded to Plaintiff's inquiries. (*Id.* ¶ 9.)

### C. The YouTube Account

On March 31, 2023, Plaintiff also noticed its YouTube channel had been renamed from "Black Girls Code" to "Kimberly Bryant – Founder." (Dkt. No. 54-1 ¶ 4.) Plaintiff was able to log into the YouTube account and change the name back to "Black Girls Code." (*Id.* ¶ 5.)

## II. Plaintiff's Motion

Plaintiff now requests the Court order Defendant "to move the BGC Domain Names to a new and separate Register.com account that BGC may have access to," or in the alterative, "BGC requests that this Court issue an Order requiring Bryant redirect the MX Records back to BGC's Domain." (Dkt. No. 54 at 6.)

## III. The Hearing

The Court held a hearing regarding Plaintiff's motion on April 3, 2023. Counsel for Plaintiff and Defendant both appeared. At the hearing, Plaintiff represented BGC still cannot receive inbound emails. Defendant represented Ms. Bryant did not make any changes to the account. Rather, Defendant explained the changes to the DNS settings and MX Records occurred because of a system-wide update to Register.com. Defendant objected to any transfer of the domain names during the pendency of this suit.

## DISCUSSION

A modification to the previously granted injunction is justified here. *Doe v. Reed*, 586 F.3d 671, 676 (9th Cir. 2009) ("A court considers four factors before granting preliminary relief: (1) whether the applicant is likely to succeed on the merits of the action; (2) whether the applicant is likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of the equities tip in the applicant's favor; and (4) that an injunction is in the public interest.") Applying that standard, Plaintiff's proposed relief—a jointly controlled Register.com account with the associated BGC domain names—is appropriate while this lawsuit is pending.

As noted in the Order Granting Plaintiff's Renewed Motion for a TRO, BGC has demonstrated the existence of serious legal questions regarding the ownership of the domain names. (Dkt. No. 29 at 1, 5.)

1    Plaintiff is likely to suffer irreparable harm absent access to the domain names via a
2    Register.com account.  The Court accepts as true, for the purposes of this motion, Defendant's
3    representation that the MX Records and DNS Settings were changed via a system update rather
4    than an intentional act.  However, this unintentional breakdown merely exemplifies the ongoing
5    risk to Plaintiff's operations and mission during the lawsuit.  Plaintiff has been unable to receive
6    any emails at its core email addresses since the middle of last week.  Plaintiff represented it must
7    log in to a Register.com account associated with the domain names to fix this ongoing issue.  And,
8    absent joint control, similar issues could reoccur.  For example, Defendant—not Plaintiff—
9    received notice of this system-wide update to Register.com because Defendant is associated with
10   the relevant account.  But Defendant failed to inform or work with Plaintiff to resolve the issue
11   prior to Plaintiff's motion for relief.  Thus, Plaintiff has shown it needs access to a Register.com
12   account associated with the domain names while the lawsuit proceeds.

13   The balance of hardships and the public interest tip sharply in BGC's favor.  Defendant
14   will suffer no harm from this temporary relief.  This temporary joint control is not a ruling on the
15   merits of the case and will not prejudice Defendant's alleged property interests.  And, as discussed
16   above, this interim relief will allow Plaintiff to continue to pursue its mission while litigation
17   proceeds.

18   So, in sum, the Court finds modification to the previously entered TRO is appropriate
19   given the likelihood of irreparable harm to BGC, the balance of equities and public interest tip
20   sharply in BGC's favor, and there are serious legal questions underlying Plaintiff's conversion,
21   CFAA, and CCDAFA claims.

## CONCLUSION

23   For the reasons stated above, the Court GRANTS BGC's request to modify the TRO.  The
24   Court Orders as follows:

25   1.   Plaintiff shall create a new Register.com account to be controlled jointly by
26   Plaintiff and Defendant.

27   2.   Defendant shall immediately transfer the relevant BGC domain names to that joint
28   account where they will remain until further order of the Court.

4

3. Neither party may make changes to the domain names or move the domain names to another account without prior permission from the Court. This Order does not prohibit BGC from making changes necessary to resolve the email issue.

4. All other deadlines and previous requirements shall remain in place.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 54.

Dated: April 3, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge