Tamany Jean Vinson Bentz (SBN 258600)
Kristina Marie Fernandez Mabrie (SBN 318315)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel: 310.595.3000
tamany.bentz@us.dlapiper.com
kristina.fernandezmabrie@us.dlapiper.com

Colin James Steele (pro hac vice)
colin.steele@us.dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
Tel: 212.335.4754
colin.steele@us.dlapiper.com

Attorneys for Plaintiff BGC INC.

CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
LAW OFFICES OF BONNER & BONNER
475 GATE FIVE RD., SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
cbonner799@aol.com
cabral@bonnerlaw.com

Attorneys for Defendant Kimberly Bryant

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BGC, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>KIMBERLY BRYANT and DOE 1,<br><br>    Defendants. | Case No.   3:22-cv-04801-JSC<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT**<br><br>Judge: Hon. Jacqueline Scott Corley<br><br>Action Filed: August 22, 2022 |

1

Pursuant to Federal Rule of Civil Procedure 16 and 26(f), Civil Local Rule 16-9, and the Court's Standing Order for All Judges of the Northern District of California governing "Contents of Joint Case Management Statement," and state jointly (except where separate statements are provided), Plaintiff BGC INC. ("Plaintiff") and Defendant KIMBERLY BRYANT ("Defendant") jointly submit the following Update Joint Case Management Statement and Rule 26(f) Report ("Joint Statement") as requested by the Court's Pre-Trial Order (Dkt. 49) as follows:

**1.     JURISDICTION AND SERVICE**

       a.     Subject Matter Jurisdiction

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a) and (b), because the claims address federal questions under the Computer Fraud and Abuse Act.  This Court has supplemental jurisdiction over BGC's state law claims because those claims are joined with substantially related federal claims.  This Court also has supplemental jurisdiction over BGC's state law claims pursuant to 28 U.S.C. § 1367(a), because all of BGC's claims arise out of a common nucleus of operative facts.

       b.     Personal Jurisdiction:  No issues exist regarding personal jurisdiction.

       c.     Venue:  No issues exist regarding venue.

       d.     Service:  No issues exist regarding service on Defendants.

**2.     FACTUAL SUMMARY AND CLAIMS/DEFENSES**

       **a.     Plaintiff's Factual Summary and Claims/Defenses**

In or around March 25, 2011, Bryant registered the domain names "blackgirlscode.com," "blackhirlscode.net," and "blackgirlscode.org" with Register.com and later in 2021 added "blackgirlscode.site" to the registration (collectively "BGC's Domain Names"). Bryant registered the Domain Names with the intent to build BGC under the brand "Blacks Girl Code", but used her personal name because, as of March 25, 2011, BGC was not yet an incorporated entity. Shortly after purchasing the BGC Domain Names in March 2011, Bryant used Register.com to host the first version of the BGC Website. The Website was accessible through the URL http://www.blackgirlscode.com. Bryant incorporated BGC Inc. (f/k/a Black Girls Code, Inc.) on March 23, 2012, and, since at least 2021, BGC has paid the Register.com domain name registration

fees associated with the BGC Domain Names.

For over a decade, the BGC Domain Names have only been used to host the BGC Website. There is no dispute that the BGC Website has always reflected the BGC name, logo, mission statement, and has always exclusively described itself as the official page of BGC. Indeed, since BGC was founded, the BGC Domain Names and Website have been used as a conduit for BGC's mission and have only been used to promote BGC's mission, share news about BGC, promote various BGC events, and communicate with the community and donors. BGC's Domain Names ensure that the community, intended beneficiaries, and donors can easily find BGC's Website. Having a domain name that contained BGC's known trademark also allowed BGC to establish its website's credibility, improved BGC's brand identity and reputation, and helped boost BGC's community engagement and fundraising efforts. Without the ability to use BGC's Domain Names – which are well established and known in the community, have built up over a decade of good will, Google search priority, and search engine optimization ("SEO")  – the community, beneficiary class, and BGC donors cannot easily find BGC on the internet.

Bryant is the founder and former CEO of BGC. Bryant was terminated from her position as the CEO and removed from the Board of Directors following an independent investigation into allegations of misconduct. Throughout her tenure at BGC, and following her termination, Bryant has treated BGC's assets (including sole access to all of its cash), as though they were her own. This improper conduct extended to BGC's Domain Names, Website, and associated accounts.

On August 17, 2022, just days after her termination, Bryant knowingly and maliciously took steps to disable and tamper with data related to the BGC Website and hijack BGC's Domain Names. As a result of Bryant's conduct, the BGC Website was taken offline and BGC's Domain Names redirected to another website located at www.saveblackgirlscode.com (the "Redirected Website"). The Redirected Website displays a press release dated August 16, 2022, purportedly issued by Bryant's counsel, a case citation to the Bryant Lawsuit, and a statement rife with false and misleading statements regarding the results of the internal investigation and Bryant's termination, and false and defamatory statements regarding one of BGC's directors.

In the immediate aftermath of Bryant's actions, BGC did not know the full extent to which

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

Bryant had tampered with the BGC Domain Names and Website but knew that Bryant was responsible. As such, on August 22, 2022, BGC filed its Complaint against Bryant. On August 23, 2022, BGC filed a Motion for Temporary Restraining Order seeking an order from the Court enjoining Bryant from further tampering with the Website, restoring the DNS configuration that was in place prior to Bryant's termination to ensure that the BGC Website was functional, providing Bryant's administrative credentials to the Bluehost account to BGC to facilitate the operation of the BGC Website; and assist BGC in the operation of the BGC Website by providing any administrative credentials to any accounts necessary in the operation of the BGC Website. On August 30, 2022, the Court held a hearing on the Motion for Temporary Restraining Order and ordered Bryant to cooperate with BGC in restoring BGC's access to the Bluehost account that same day.

Upon gaining access to the BGC Bluehost Account, BGC retained a forensics expert to investigate the actions taken by Bryant and began to determine the extent of the damage done by Bryant. The investigation uncovered that, on August 17, 2022, at approximately 8:39 p.m., while on vacation in Martha's Vineyard, Bryant logged into the BGC Bluehost account without authorization and altered or deleted data related to BGC's Website. Then, after tampering with the Bluehost account, at approximately 8:50 p.m., Bryant used the Register.com account where the BGC Domain Names are hosted and redirected the BGC Domain Names to the Redirected Website.

As a result of her conduct, BGC's website was completely removed from the internet and the data related to the website was destroyed. In other words, BGC had no website and all of the money it had invested in creating a website and optimizing the website for online searching was gone. Without a website, BGC had no way to communicate with people who had volunteered for certain events, no way to secure additional volunteers, and most importantly no way to allow black girls who needed BGC's services to register for upcoming events. Bryant put a huge roadblock in front of BGC to prevent it from furthering its charitable mission—the mission she had set out to address from the beginning. BGC was forced to rebuild its website from scratch, and it is estimated that it will take approximately four years and $3 million to recover the lost value of the website.

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

On September 14, 2022, BGC filed an amended complaint for violation of computer fraud and abuse act, violation of California computer data access and fraud act, and two separate conversion claims.

On March 14, 2023, Bryant filed an untimely Answer to BGC's Amended Complaint and Cross-Complaint. Bryant's Cross-Complaint is one of four frivolous, duplicative lawsuits that she has filed against BGC and certain BGC Board members (i.e., the members of the Special Committee). Bryant first filed a putative derivative action against BGC and certain board members in the Alameda County Superior Court in January 2022, challenging her suspension as CEO of BGC and asserting claims for breach of fiduciary duty, breach of charitable trust, and negligence. She also filed another state-court lawsuit in her individual capacity against BGC and certain BGC Board members, asserting claims of breach of BGC's bylaws, breach of fiduciary duties, defamation, and retaliation (among others). That apparently was not enough litigation. So, seven months later, Bryant filed a separate sprawling, fourteen-count complaint in this Court against BGC, certain BRG Board members, Wells Fargo bank, and numerous Wells Fargo executives. In that federal action—which is captioned *Bryant v. Black Girls Code, et al.*, 3:22-cv-04643 and is currently pending before Judge Tigar—Bryant made identical allegations and asserted many of the same causes of action that she is pursuing in state court and is attempting to assert here.

In the Cross-Complaint, Bryant attempts to add eight parties as "Cross-Defendants"—the same ones she previously sued in state and federal court—and purports to assert fourteen different causes of action relating to her termination and BGC's actions to withdraw Bryant's access to and authority over BGC's bank accounts at Wells Fargo.

BGC's position is that the Cross-Complaint is duplicative and meritless. BGC denies all the claims asserted therein. Bryant has also failed to identify any statutory basis for this Court to exercise subject matter jurisdiction over her Cross-Claims: federal question, diversity, and supplemental jurisdiction are all absent, which alone requires dismissal of her Cross-complaint. And even if she could overcome those jurisdictional defects (she cannot), this Court should decline to exercise jurisdiction over her crossclaims for various reasons, including the pendency of three other lawsuits she is currently pursuing against the same parties and involving the same claims.

BGC has a pending Motion to Dismiss Bryant's Cross-Complaint which is set to be heard by this court on June 29.  Similarly, BGC also has a pending Motion to Strike Bryant's Answer, which also improperly sets forth all of the allegations contained in the Cross-Complaint.

      **b.**    **Defendant's Factual Summary and Claims/Defenses**

Bryant denies each and every allegation in Plaintiff's Complaint, and incorporates all of her statement of facts and all claims in her First Amended Complaint.  Since approximately 2011, BRYANT has spearheaded efforts to provide access to technology and technological training to underprivileged girls of color through BGC. BRYANT, who initially funded BGC from her own 401K account, is an electrical engineer who has led and served as BGC's CEO since its formation. Under BRYANT's leadership, BGC has provided over 30,000 young women with access to skills in computer programming and technology through CODE classes taught by over 4,000 volunteers. BRYANT has been at the forefront of the movement to open the doors of the 'tech' world to Black girls who have long been left out of that industry. BRYANT is a respected thought leader and one of the less than 1% women of color who lead nonprofit organizations in the area of tech education and/or other ecosystems.

BRYANT is a respected global and Silicon Valley leader, who has dedicated herself to the founding, growth, and expansion of Black Girls CODE from a single chapter in the Bay Area to 15 chapters in major cities across the US and South Africa, including a second headquarters in New York City sponsored by Google. BGC as an organization has grown from a grass-roots level non-profit organization receiving approximately $6,500,000 in donations through 2019, to a rapidly expanding organization receiving more than $30,000,000 in funding by the close of 2020. During the pandemic, BRYANT led BGC through an unprecedented shift to virtual programming that allowed the organization's student reach to expand exponentially. This resulted in BGC reaching over 10,000 students in 2020 alone, while doubling its staff and experiencing a 1,000 percent increase in revenue. BGC is now an internationally recognized non-profit due to the generous gifts of the public and due to strategic corporate partnerships, which have positioned BGC for continued growth in external partnerships and revenue in 2022.

/ / /

### c.   HILES Takes an Interest in BGC for her Personal Benefit

Concurrent with the success and notoriety that BGC obtained on account of the influx of generous funding and donations through 2021, HILES took a keener interest and a more active role on BGC's Board. Unbeknownst to BGC and BRYANT, HILES was eager to salvage her professional reputation. HILES, the first President of Calbright College, was forced to resign in 2020 following the failure of Calbright's first state audit amidst findings of mismanagement, cronyism, and potential fraudulent use of state funds. Following her resignation, HILES sought to defend her reputation by candidly admitting that "[i]t is easy to blame the founding CEO for everything..." (Add link to the audit)

Following BGC's exponential increase in charitable donations during and following the pandemic, HILES became more active in their role as a director. Upon information and belief, BRYANT alleges that HILES sought to capitalize on BGC's growth and increased funding for her own personal gain. BRYANT is informed and believes that since approximately September of 2020, HILES has been a director at Udemy, a global marketplace for learning and online education. In connection with preparing for Udemy's Initial Public Offering ("IPO"), HILES attempted to arrange a partnership between BGC and Udemy. BRYANT repeatedly warned HILES of the impropriety of HILES' attempt to arrange a partnership between BGC and Udemy and informed HILES repeatedly that BGC was already pursuing and engaged in a partnership with Udemy's closest competitor; Coursera. HILES was relentless in her insistence that BGC engage in partnership with Udemy since the company sought to go public the following year stating "this would be good for Udemy". As a result of HILES near bullying of BRYANT and other staff regarding this partnership, BRYANT objected to HILES' nomination as BGC's interim chair on account of HILES' conduct in this regard and other concerns regarding their bullying behavior and blatant self-dealing and conflict of interest.

Bryant further alleges on information and belief that HILES intentionally impeded BGC's establishment of a $20,000,000 endowment which was fully approved by the Board in June 2021. Although the endowment could have been implemented by the late spring or early summer of 2021, HILES unilaterally impeded the establishment of the endowment. As acting Treasurer and

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

interim Chair of the Board, HILES refuses to follow through with the Board's June 2021 Resolution to fund the endowment. BRYANT alleges on information and belief that the purpose of the delay is because HILES intended to divert the endowment funds to a venture capital firm with which HILES had a personal financial interest as then acting managing partner.

During the course of several meetings with principals of WestFuller, HILES made a "soft pitch" of the investment fund which they managed under the guise of completing due diligence for the BGC endowment. Following this meeting with the principals of WestFuller, HILES still refused to complete the final signatures necessary for moving the investment forward and alluded to the necessity for an additional vote by the BGC board although this measure had already been approved in June. When BRYANT pointed out that the full board had unanimously approved the establishment of the endowment in June and included the meeting minutes, HILES relented and gave her "approval" to move forward in December 2021. Unfortunately, due to BRYANT's subsequent suspension led by HILES and members of the self-appointed special committee just a few weeks following this interaction, the transfer of funds to the endowment account did not occur as planned.

### d.    HILES Uses Employee Resignations to Oust BRYANT

Over the summer months of 2021, three employees of BGC resigned and expressed concerns over BGC's workplace culture. In response to the resignations, BRYANT, in July of 2021, immediately convened a meeting of the Board of Directors to discuss the concerns raised by the employees who had resigned.

At the meeting Bryant proposed that BGC take immediate action to improve BGC's workplace culture. Bryant proposed that BGC begin taking steps to evaluate and improve its workplace environment, including the hiring of a cultural consultant and a Chief Strategy Officer to improve BGC's efforts moving forward. On or about October of 2021, BGC did in-fact hire Karla Monterroso, the former CEO of the racial equity non-profit Code2040, as a special consultant to evaluate the inner workings of BGC. Bryant also met with Edgility Consulting to launch an initiative to improve staff compensation and to provide coaching and mentorship to the senior leadership team.

At the same meeting, Bryant was notified by HILES, that HILES had already independently consulted with two of the employees who had resigned; Isis Miller and Anesha Grant. HILES, who as a Board member and pursuant to BGC's internal policies, was neither tasked nor permitted to speak with resigned personnel and was reprimanded for her actions by then board chair Dr. Stephanie Adams. Despite going ahead and speaking with them, HILES refused to reveal the specifics of her conversations with Ms. Miller and Ms. Grant, but instead, turned her attention on BRYANT by disparaging her character and attacking her ability to lead BGC in front of all board members, the entirety of which was recorded.

During the meeting HILES was admonished for her conduct, and the Board agreed that it would explore the potential of hiring an independent investigator to conduct an employee survey. Thereafter BRYANT met with Board members, including former Board Chair Dr. Stephanie Adams, to discuss the personnel issues raised by the July 2021 resignations. At that time, BRYANT and Dr. Adams agreed that the issues presented by the resignations did not warrant involvement of legal counsel, but that BGC should still conduct the staff survey as previously discussed.

On or about July 28, 2021 an additional meeting of the Board of Directors was held. At that meeting Dr. Adams, as Chair of the Board, announced that with respect to the resignations, she had not found any issues within the organization that warranted further intervention or action by the Board nor the necessity for involving legal counsel. Dr. Adams further stated that BGC would still move forward and proceed with the cultural evaluation and would act to address some of the concerns that were raised. HILES and BROWN-PHILPOT, however, raised strong opposition to the decision made by Dr. Adams and requested that the Board meet anew to discuss the issues.

On or about September 22, 2021, Dr. Adams resigned from her role as Board Chair on the BGC Board of Directors, leaving that Board seat vacant. On information and belief, BRYANT alleges that HILES began aggressively campaigning to succeed Dr. Adams as Board Chair, although HILES as acting Treasurer, could not hold both positions simultaneously pursuant to BGC's bylaws.

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

On or about September 28, 2021, BRYANT received a memorandum purportedly from the BGC Board sent from board member Sherman Whites, requesting immediate information from BGC's legal counsel as to the insurance policies provided for BGC's Directors and Officers, as well as clarification of the official communications between BGC and the employees that had resigned in July, 2021. This communication precipitated a slurry of email communication between BRYANT and other members of the board including SHERMAN WHITES, HEATHER HILES, and STACY BROWN-PHILPOT, who endeavored to install HILES (although she was currently serving as BGC board treasurer), as the interim board chair by vote over email. BRYANT responded that pursuant to the bylaws, a formal meeting was required on the issues raised and that (1) Loeb & Loeb, LLP was BGC's legal counsel, (2) BRYANT would provide the insurance policy requested, and (3) it had already been determined that the employee resignations did not warrant the involvement of legal counsel. BRYANT further requested a formal meeting of the Board to elect a new Board Chair, which was vacant due to the resignation of Dr. Adams.

On or about October 5, 2021, a special board meeting was convened by board member SHERMAN WHITES.  Prior to this meeting BRYANT sent a memorandum to her fellow board members outlining her concerns regarding HILES including workplace bullying, self-dealing and conflict of interest, and other workplace misconduct. BRYANT requested to read the contents of the memorandum at the start of the board meeting which did in fact occur and despite HILES objection. The memorandum provided additional details of HILES misconduct and self-dealing. Nevertheless, despite BRYANT's strenuous objections, HILES was nominated for the interim Board Chair by SHERMAN WHITES and seconded by STACY BROWN-PHILPOT. Now serving unlawfully as both BGC's Treasurer and Chair of the Board, HILES indicated that she was going to create a "Special Committee" comprised of HILES, BROWN-PHILPOT, and WHITES to investigate "employee workplace concerns". No vote was taken on the creation of a Special Committee during the October 5, 2021 meeting.

/ / /

/ / /

/ / /

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

BRYANT alleges upon information and belief that at some point on or about October of 2021, the Board held a meeting without proper notice in violation of the BGC bylaws that specifically excluded BRYANT, who as CEO, had been serving as the Board's President. At that October 2021 meeting, a "Special Committee" was formed consisting of Defendants, HILES, BROWN-PHILPOT, and WHITES, with the express purpose of looking into employment and human resources matters. It was understood that the Special Committee would report back to the full Board of Directors with its findings and recommendations.

BRYANT further alleges that, prior to the secret meeting concerning the formation of the Special Committee, HILES had independently consulted with an attorney from the law firm DLA Piper; Holly Lake, who was in attendance at the meeting despite the fact that the firm had not yet been contractually engaged by the organization. Thereafter, Board member STACY BROWN-PHILPOT, in acting on behalf of the Special Committee, forced BRYANT to retain DLA Piper as legal counsel on "employment related issues." BRYANT was unaware nor notified that DLA Piper was tasked with conducting an investigation into allegations of BRYANT's misconduct.

Around the time of the formation of the Special Committee in October of 2021, BRYANT had formally requested that HILES be investigated for workplace misconduct in connection with a meeting of the Board of Directors on July 2, 2021. During the July 2, 2021 Board meeting, HILES verbally assaulted BRYANT and was reprimanded by board chair Dr. Stephanie Adams for her inappropriate conduct. On account of BRYANT's attempt to thwart HILES from engaging in self-dealing, as well as HILES threatening remarks to BRYANT, significant tensions arose between HILES and BRYANT. BRYANT alleges on information and belief that the Special Committee did not investigate HILES's conduct at the July 2, 2021 Board meeting, as HILES, who spearheaded the Special Committee, was not inclined to investigate herself.

Up until December 8, 2021 when HILES directly contacted BRYANT's Chief of Staff and demanded that certain employee personnel information be immediately provided to HILES, BRYANT had no communication with the Special Committee, nor with any attorney from DLA Piper or any "investigator" retained through the Special Committee. After receiving HILES demand, BRYANT informed HILES that she needed to speak with BGC counsel to discuss the

impacts of sharing personnel information to first determine whether it was permissible to disclose the requested information.

In addition, BRYANT attempted to engage outside counsel to further determine the legalities of providing confidential personnel files to the Special Committee. Such attempt was unsuccessful as outside counsel was unavailable.

Upon confirmation of Board member availability, a Board meeting was scheduled for December 20, 2021 to approve BGC's 2022 budget. Leading up to the December 20, 2021 meeting, HILES made repeated attempts to cancel the meeting, including up until the morning of December 20, 2021.

**BRYANT is Suspended as CEO Without a Vote of the Board**

On or about December 20, 2021, a special and properly noticed meeting of the Board of Directors was held. BRYANT, HILES and other members of the Board were in attendance. Following the meeting, HILES requested to meet privately with BRYANT. BRYANT informed HILES that she could not meet at that time due to a number of pre-existing obligations, but asked her to reschedule a meeting through her assistant. In following up with BRYANT's assistant to reschedule the meeting, HILES insisted that BRYANT meet alone with all three members of the Special Committee (HILES, BROWN-PHILPOT, and WHITES).

BRYANT responded that she was uncomfortable meeting with the Special Committee without the presence of counsel. BRYANT informed HILES that although she had a previously scheduled meeting with counsel on Tuesday, December 21, 2021, she was uncertain whether it would be possible for her counsel to call in for a meeting with the Special Committee. BRYANT suggested that the meeting be rescheduled in January 2022 after the holiday season.

On or about the morning of December 21, 2021, BRYANT's corporate email and access to BGC's internal portals was disabled.

When BRYANT reached out to her chief of staff, LaShonda Polite to inquire about her inability to access her corporate accounts, she was told that HILES had directly contacted Ms. Polite to inform her to not communicate with BRYANT directly and that she had suspended BRYANT indefinitely. Later in the afternoon, around 4:00 p.m., BRYANT received a email from

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

HILES via BRYANT's personal email account, notifying her that she had been placed on indefinite suspension as BGC's CEO.

The December 21, 2021 letter states that "[t]he Board of Directors have been made aware of serious allegations that involve you and we are attempting to conduct a thorough and robust investigation into those allegations. You have conducted yourself in a manner so as to disrupt and impede the ongoing investigation." The December 21, 2021, letter further notified BRYANT that Sofia Mohammed was named the interim Executive Director of BGC, and that "Counsel will reach out to you regarding the ongoing investigation, which you are required to cooperate with as an employee of BGC."

In addition to being stripped of both her email and the ability to access corporate documents, BRYANT was also locked out of the BGC premises. BRYANT attempted to contact Sofia Mohammed but received no response. BRYANT attempted to contact her Chief of Staff, but BRYANT was informed that HILES had ordered a gag-order on all BGC personnel from communicating with BRYANT. HILES gag-order was initiated before BRYANT was notified of her suspension and that if said gag-order was violated, BGC personnel's employment would be terminated.

BRYANT alleges that upon information and belief, the termination of her access to BGC email, internal documents, and BGC's premises is HILES calculated attempt to preclude BRYANT's ability to affirmatively prove that HILES was engaged in self-dealing and that BROWN-PHILPOT was apprised of HILES intention. BRYANT further alleges upon information and belief that she was kept from accessing email and corporate documents in order to prevent her from communicating with BGC's counsel about her upcoming meeting with the Special Committee, and the Committee's intention to suspend her.

Following the publication of BRYANT's suspension from BGC in the media, BRYANT was contacted by the law firm, Loeb & Loeb who was unaware that the BGC Board had taken any action to remove BRYANT and/or that the Board had authorized any investigation into BRYANT's alleged misconduct. BRYANT later learned, and alleges upon information and belief, that the full BGC Board was unaware of any alleged misconduct by BRYANT prior to her

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

suspension, and that the Special Committee, who was solely tasked with investigating various employment and HR issues, did not communicate any of its findings with the Board prior to her suspension. Nor did the BGC meet, discuss, or otherwise vote to remove BRYANT from her role as CEO. In fact, BRYANT's suspension was a complete surprise to many of the Board members, who only learned of BRYANT's suspension after such news was made public.

BRYANT alleges on information and belief that the alleged "investigation" by BGC and the Special Committee was an unsubstantiated, untruthful and disingenuous pretext spearheaded by HILES to have BRYANT removed as CEO in order for HILES to obtain further control over BGC operations. As such, HILES sought to orchestrate the means by which to implement her personal agenda of self-dealing as previously alleged herein. BRYANT further alleges on information and belief that Defendants' HILES, BROWN-PHILPOT, and WHITES have, under the guise of the "Special Committee,' acted independently of the Board of Directors in order to (1) suspend BRYANT and prohibit her from accessing company records and information (despite otherwise being entitled to as a matter of law), (2) keep BRYANT from communicating with BGC's counsel, and (3) to conduct an unauthorized investigation concerning BRYANT's alleged misconduct in an attempt to justify the removal of BRYANT as BGC's CEO.

On or about January 10, 2021, in compliance with Corporations Code Section 5710 et seq., BRYANT sent correspondence to BGC and the BGC Board that apprised them of the allegations contained in this Complaint, as well as a draft copy of the instant Complaint to ensure that BGC was on notice of all material allegations alleged herein. BRYANT's correspondence to the Board was drafted in response to correspondence that she had received from BGC, dated January 7, 2021, which insufficiently responded to BRYANT's December 28, 2021 correspondence to the Board.

**BGC Publicly Defames BRYANT**

Following BRYANT's suspension, BGC has consistently repeated false, disparaging, and defamatory statements concerning BRYANT's alleged misconduct in the public forum. Once the news about BRYANT's suspension was made public, national news sources sought comment from BGC. BGC has repeatedly set forth a false narrative that BRYANT is being investigated for "serious allegation(s)" of misconduct. For example, when asked for comment from the news outlet

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

Business Insider, the BGC Board emailed a statement which stated in part, that BRYANT is still a BGC staff member but that "serious allegations of workplace impropriety are being investigated." In a separate statement to Business Insider, BROWN-PHILPOT stated that the Board was investigating "serious allegations of workplace impropriety."

In addition, on or about December 24, 2021, the Special Committee (and not the entire BGC Board) released a public statement to BGC's partners and donors purporting to explain the circumstances surrounding BRYANT's suspension ("Special Committee Statement".) The Special Committee Statement reads: "Earlier this year, the Board received or became aware of concerns raised by current and former employees about BRYANT's conduct. On or about October 5, the Board formed the Special Committee to review and evaluate the complaints and determine what, if any, action should be taken with respect to these concerns." The Special Committee Statement was issued and signed by HILES.

After obtaining legal counsel, BRYANT issued a demand letter to BGC's counsel dated December 28, 2021 ("Demand Letter"), regarding the events leading up to BRYANT's suspension. The Demand Letter demanded, among other requests, that BGC produce all documents to which BRYANT is entitled pursuant to Corporations Code Section 6334. The Demand Letter further requested that BRYANT be immediately reinstated as CEO and that BGC refrain from further defamatory and disparaging public comment regarding the purported investigation into BRYANT's alleged misconduct that never occurred. To date, BGC has failed to provide the records to which BRYANT is entitled as a matter of law, and has otherwise failed to reinstate her access to emails and organizational documents.

As a result of both BRYANT's suspension, and public comments made by various representatives of BGC, BRYANT's opportunities and offers to speak at public engagements have precipitously declined despite having consistently received such offers prior to DEFENDANTS' unfounded assertions. BRYANT is a prominent public speaker who has annually addressed private and public engagements with approximately twenty appearances per year.

At the time of BRYANT's suspension, BRYANT was a finalist for selection as a director for a for-profit corporation. As a result of BGC's unlawful suspension, BRYANT has been

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

informed that she is no longer a candidate for that director position.

At the time that BGC announced to the general public that its Board was investigating "serious allegations of workplace impropriety" by BRYANT, the Board had not yet actually commenced any formal or informal investigation BRYANT and/or her leadership of BGC.

**HILES Continues to Act Without Board Approval**

Less than two weeks following BRYANT's wrongful suspension from BGC, HILES continued to act on BGC's behalf without obtaining appropriate approval from the BGC Board. On information and belief, HILES, purportedly under the authority of the Special Committee, began a campaign of unilaterally providing various BGC employees promotions and salary increases in an attempt to gain favor with BGC employees in light of the current dispute with BRYANT.

On information and belief, beginning in January 2022, HILES, has exercised carte blanche authority over the approval of new executive hires and has unilaterally assumed operational control over organizational matters without consideration and oversight by the BGC Board. Such conduct is in blatant contravention of BGC's institutional policies and its Bylaws.

BRYANT alleges upon information and belief that HILES unilaterally ordered BGC's Vice president of Human Resources, Karla Tai, to increase the salary of BGC's interim Executive Director, Sofia Mohammed to the same amount as BRYANT had been receiving as CEO. As such request occurred prior to the BGC Board receiving results of the investigation into allegations against BRYANT, such salary increase unequivocally demonstrates that HILES and BGC intended to remove BRYANT as CEO regardless of the findings of the purported investigation.

**BGC Wrongfully Removes BRYANT from BCG's Board and Wrongfully Terminates her Employment**

After the Board suspended BRYANT from her position as BGC's CEO, and after the Board prematurely and falsely announced to the general public that it was investigating "serious allegations of workplace impropriety," the Board finally retained an outside lawyer, Aisha Adams ("ADAMS"), to investigate allegations concerning BRYANT and her leadership of BGC.

ADAMS interviewed approximately 25 current and former BGC employees regarding

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

BGC workplace and culture between March 2022 and July 2022. BRYANT agreed to voluntarily meet with ADAMS and as such, sat through four separate one hour interview sessions with ADAMS in July 2022.

On August 12, 2022, the Board held a special Zoom meeting to allegedly review the results of the internal investigation and to review BGC financial performance. The Board summarily refused to share organizational financial documents with BRYANT. Instead of addressing the previously decided agenda items, the Board was confronted with a request by Board member PHILPOT to immediately convene a vote on BRYANT's removal as a BGC board member. PHILPOT addressed the Board with a prepared resolution moving to formally remove BRYANT as a board member before addressing any of the items on the meeting's agenda. When BRYANT objected to BROWN-PHILPOT's motion and asked for clarification on why she was being removed from the board, BROWN PHILPOT declared that it was for the "good of the organization."

BRYANT insisted that the results of the investigation be shared with the Board before moving forward with BROWN PHILPOT's motion and subsequent vote in order to ensure that all Board members were apprised of the results of the investigation. Such was imperative as the "Special Committee" affirmatively asserted that no one had been made privy to the results of the investigation up to that point. In contravening Board protocol by withholding information that was imperative for rendering a reasonably informed vote, the "Special Committee" arrived at the meeting with a detailed, pre-drafted resolution in hand to remove BRYANT.

As a sitting BGC Board member, BRYANT had a contractual right under BGC's Bylaws to cast a vote on her removal and/or termination as had all BGC members. Indeed, BGC confirmed this right by providing BRYANT with notice of the Board's special meeting and log-in credentials for the special meeting's Zoom session.

BRYANT was present over Zoom for the beginning of the August 12, 2022 special meeting. However, HILES and BGC's counsel required that BRYANT would be temporarily excluded from the meeting while ADAMS presented the BOARD with her investigative findings. BRYANT protested her removal but was removed from the Zoom session by HILES

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

In BRYANT'S absence, ADAMS presented the BOARD with her investigative findings. ADAMS specifically informed the BOARD as to the allegations levied against BRYANT, including the unsubstantiated allegations pertaining to BRYANT's mismanagement and mistreatment of employees.

During ADAMS'S presentation, members of BGC's Board communicated with each other through Zoom's chat feature. Several Board members stated that they were unaware of any direct allegations made against BRYANT and/or that ADAMS had been hired to conduct a formal investigation that involved more than 26 current and former BGC staff members and consultants.

BRYANT learned of these chat communications as they occurred from members of the BGC Board who were in attendance and were participating in the special meeting. BRYANT informed her legal counsel, who immediately sent BGC'S counsel (who was also participating the special meeting over Zoom) an e-mail demanding that all Zoom chat communications (including those relating to the investigation) be preserved.

At the end of ADAMS'S presentation, the Board voted on BRYANT'S removal from the Board and her termination as CEO. The Board was well aware that BRYANT was excluded from the Zoom call but made no attempt to make contact with her or counsel to allow her to rejoin the call in order to cast her vote. The Board was also aware that BRYANT was waiting to rejoin the main session by, among other things, the fact the Board's counsel received a contemporaneous e-mail from BRYANT'S counsel discussing events taking place during the meeting. Nevertheless, BGC refused to permit BRYANT to rejoin the Zoom session where the vote on her removal and termination were taking place. BGC's Board voted 3-2 to remove BRYANT's Board appointment and to terminate her employment. As was her right under BGC's bylaws, had BRYANT been able to participate in the vote, she would not have been removed as a Board member or terminated as BGC's CEO.

**BGC Continues to Retaliate Against Bryant After her Removal and Termination.**

Despite DEFENDANT's most egregious, illegitimate and reprehensible conduct as articulated above, BGC and DEFENDANTS continue their wrongful campaign of harassment and retaliation against BRYANT even though she is no longer a Board member or employee.

On account of DEFENDANTS' wrongful termination, BRYANT lost her family's health insurance. Under relevant federal and California law, BGC was required to give BRYANT statutory notice of her right to COBRA and Cal-COBRA continuation coverage within 14 days of her August 12, 2022 termination. Despite repeated inquires by BRYANT, BGC initially refused to give BRYANT statutory notice of her right to continuation coverage, and BRYANT only received that notice on September 20, 2022, some thirty-nine days after her purported termination.

In addition, BRYANT was denied the proper distribution of her remaining vacation days. In a memo from BGC VP of Human Resources, Karla Tai, BRYANT was informed that her final pay would include a randomly generated three weeks of vacation. When BRYANT contested the accuracy of vacation pay calculation, Ms. Tai responded with an updated and increased distribution which was still yet incorrect to the amount due Ms. Bryant.

On August 22, 2022, BGC filed a baseless federal lawsuit in the Northern District of California entitled BGC v. Kimberly Bryant and Doe 1, Case No. 3:22-CV-04801-JSC. In that lawsuit, BGC accused BRYANT of hacking into a server containing BGC's website code, content, and other components and damaging and/or deleting these items that disabled BGC's website. Such allegations are unfounded as BRYANT did not have access to BGC's website files and did not delete or destroy any of the website's components. The BGC website was, and remains, perfectly functionable. Indeed, BGC was forced to amend its complaint when faced with indisputable proof that its website was not disabled by any wrongful conduct by BRYANT.

BGC'S continued harassment and retaliation has and will continue to significantly damage BRYANT. Among other things, BRYANT has lost multiple lucrative speaking engagements as a result of BGC's wrongful accusations and termination. Moreover, BRYANT has been forced to incur substantial attorneys' fees and expenses defending against BGC's frivolous federal lawsuit.

3.     **SYNOPSIS OF PRINCIPAL LEGAL ISSUES**

a.     Plaintiff's Synopsis of Principal Legal Issues

Whether Bryant engaged in unlawful hacking and conversion of the BGC website and domain names when she redirected the BGC domain names to her own personal website.

b.     Defendant's Synopsis of Principal Legal Issues

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

Defendant denies each and every allegation.  Defendant Bryant asserts that she is the sole owner of each and every Domain Name as her personal property.

**4.     PROCEDURAL HISTORY**

On August 22, 2022, BGC filed the instant lawsuit in the U.S. District Court for the Northern District of California against Bryant for commandeering its website and redirecting users to a new website, where Bryant posted a press release about her alleged wrongful termination and her federal lawsuit (the "Website Domain Action"). The complaint maintains causes of action for violation of computer fraud and abuse act, violation of California computer data access and fraud act, and conversion. On August 23, 2022, BGC filed a Motion for Temporary Restraining Order ("First TRO"). At the hearing on the Motion for Temporary Restraining Order, the Court directed Bryant to return BGC's Bluehost account to BGC since it was the account that hosted BGC's website. Upon gaining access to its Bluehost account, BGC immediately investigated what had happened to the data in the account. BGC's computer forensics expert quickly discovered that, on August 17, days after her termination, Bryant had logged into the Bluehost account and altered and deleted critical data related to BGC's Website prior to redirecting the domain name to her website. Bryant's actions caused BGC's Website to become nonfunctional, and it was unclear whether BGC would be able to remedy the damage that Bryant caused.

On September 14, 2022, BGC filed an amended complaint in the Website Domain Action that separated the conversion claim into two claims, one for conversation of BGC's website and one for conversion of BGC's domain name. That same day, BGC also filed a Renewed Motion for Temporary Restraining Order ("Renewed TRO"). On September 23, 2022, the Court granted BGC's Renewed TRO. On September 28, 2022, the Court referred the action to private mediation and the parties agreed to private mediation with the Hon. Maria-Elena James (Ret), which was unsuccessful.

On January 12, 2023, the parties appeared for a Case Management Conference and the Court encouraged the parties to continue to work with the Hon. Maria-Elena James (Ret.).

On March 14, 2023, Defendant Bryant filed her Answer to BGC's Amended Complaint and her Cross-Complaint against BGC, Inc, and adding additional parties.  On March 29, 2023,

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

the parties jointly sought, and this Court granted on March 30, a continuation of time for Plaintiff to file dispositive motions and/or motions to strike in response to both Defendant's Answer and Crossclaim.

On March 31, 2023, Plaintiff BGC filed an Emergency Motion to Enforce Temporary Restraining Order.  The Motion was heard by the Court on April 3, 2023 and an Order was issued directing Plaintiff to create a new Register.com account to be controlled jointly by Plaintiff and Defendant. On April 4, 2023, the Court ordered that: "By 2 p.m. on April 4, 2023, Defendant shall transfer the following domains to the Joint Account: (a) <blackgirlscode.org>, (b) <blackgirlscode.site>, (c) <blackgirlscode.net> and (d) <blackgirlscode.com>."

On April 7, 2023, BGC filed its second Emergency Motion for Temporary Restraining Order and For Contempt Sanctions.  The Court held a hearing for the Motion that same day and ordered additional briefing.  Bryant filed her Opposition to the Motion on April 17, 2023 and BGC filed its Reply on April 24, 2023.

On May 4, 2023, BGC filed its Motion to Strike Bryant's Answer to BGC's Amended Complaint and also its Motion to Dismiss Bryant's Cross-Complaint for lack of subject matter jurisdiction.

At this time, there are currently three motions pending before this Court, two of which dramatically impact the scope of the issues the parties will be litigating.  As such, the parties mutually agree that additional time on discovery and other deadline in this proceeding are necessary and the Parties requested a continuance of all dates in the case management schedule by 60 days.

**5.    STATUS AND AMENDMENT OF PLEADINGS**

Plaintiff BGC does not anticipate adding any further claims against Defendant.  Plaintiff anticipates that it may be necessary to add additional parties including parties that were only recently identified by Defendant in response to Plaintiff's discovery requests.

**6.    EVIDENCE PRESERVATION\**

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm they have discussed and taken

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT
WEST\302735382.2

reasonable steps to preserve ESI. Each party shall take reasonable affirmative steps to preserve evidence relevant to the issues reasonably evident in this action.

**7.   INITIAL DISCLOSURES**

BGC served its initial disclosures on February 24, 2023. Bryant has not yet served her initial disclosures.

**8.   DISCOVERY**

Plaintiff BGC served Defendant with (1) requests for production, (2) interrogatories, and (3) requests for admission. Plaintiff requested to obtain copies of the hard drives of all electronic devises with Defendant used to access any of the accounts, domain names, and/or websites at issues in this action.  Plaintiff requested to obtain all correspondence with any third party with which Defendant discussed accessing any of the accounts, domain names, and/or website in this action, and also Defendant's conduct of redirecting the domain names at issue to her website located at <saveblackgirlscode.com>. Plaintiff also intends to seek the deposition of relevant parties.  Plaintiff intends to serve supplemental (1) requests for production, (2) interrogatories, and (3) requests for admission.  Plaintiff also intends to serve some third party subpoenas.

Defendant intends to serve Plaintiff with full blown discovery including but not limited to the following: (1) document production; (2) depositions; (3) interrogatories; (4) request for admissions; (5) request for inspection (if necessary).

The parties agree to the standard limitations and timing on discovery set out in the Federal Rules of Civil Procedure.

**9.   CLASS ACTION**

This action is not a class action.

**10.   RELATED CASES**

While there are not any cases related to this matter under the definition of "related case" in the Local Rules, there are other cases pending that include some of the same parties, including:

Kimberly Bryant v. Black Girls Code et al., Case Nos. 22CV005512 & 22CV005517 (Cal. Super. Ct. Alameda Cnty., filed Jan 12, 2022); and

Kimberly Bryant v. Black Girls Code et al., Case No. 3:22-cv-04643 (N.D. Cal., filed Aug.

11, 2022).

**11.    RELIEF**

Plaintiff BGC is seeking a permanent injunction; an award of BGC's costs and expenses, including attorneys' fees and costs of suit; damages, and any other additional relief the Court may deem just and proper.  Defendant seeks a dismissal of the Action.

**12.    SETTLEMENT AND ADR**

On September 28, 2022, the Court referred the action to private mediation and the parties agreed, at Defendant's request, to private mediation with the Hon. Maria-Elena James (Ret).  On December 12, 2022, the parties engaged in a full day of mediation with Judge James and were unable to reach resolution.  The parties are scheduled to mediate again on August 2, 2023, with the Hon. Maria-Elena James (Ret).

**13.    CONSENT TO MAGISTRATE JUDGE**

The Parties have not consented to assigning this case to a magistrate judge.

**14.    OTHER REFERENCES**

The Parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

**15.    NARROWING OF ISSUES**

Because this case is still in its initial stages, the Parties do not believe there are any issues that can be narrowed by agreement or motion at the present time.

**16.    EXPEDITED TRIAL**

The Parties do not believe an expedited schedule is appropriate for this case.

**17.    SCHEDULING**

The parties current pre-trial schedule is as follows:

| Event | Current Deadline |
|---|---|
| Deadline to add parties and amend pleadings | May 5, 2023 |
| Close of fact discovery | June 4, 2023 |
| Opening expert reports | June 30, 2023 |

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

| Event | Current Deadline |
|---|---|
| Rebuttal expert reports | July 25, 2023 |
| Expert discovery closes | August 18, 2023 |
| Deadline for Hearing Dispositive Motions | October 5, 2023 |

The parties jointly request the following revised schedule to allow more time for discovery.

| Event | Current Deadline |
|---|---|
| Deadline to add parties and amend pleadings | July 6, 2023 |
| Close of fact discovery | August 3, 2023 |
| Opening expert reports | August 29, 2023 |
| Rebuttal expert reports | September 13, 2023 |
| Expert discovery closes | October 17, 2023 |
| Case dispositive motions | December 4, 2023 |

**18.    TRIAL**

Trial is currently set for December 11, 2023, at 8:30 a.m., in Courtroom 8, 19th Floor, U.S. District Court, 450 Golden Gate, San Francisco, California.

**19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

BGC has filed its certification of interested entities or persons.

**20.    PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.    OTHER**

The Parties are not presently aware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

Dated: May 9, 2023                          **DLA PIPER LLP**


                                             */s/ Tamany V. Bents*
                                            TAMANY VINSON BENTZ
                                            KRISTINA FERNANDEZ MABRIE
                                            Attorneys for Plaintiff, BGC INC.

Dated: May 9, 2023                          **LAW OFFICES OF BONNER & BONNER**


                                             */s/ Charles A. Bonner*
                                            CHARLES A. BONNER
                                            Attorney for Defendant, Kimberly Bryant

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2

## __ATTESTATION__

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

_/s/ Tamany V. Bentz_
Tamany V. Bentz

UPDATED JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

WEST\302735382.2