UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BGC, INC., <br>         Plaintiff, <br> v. <br> KIMBERLY BRYANT, <br>         Defendant. | Case No. 22-cv-04801-JSC <br><br> **ORDER RE: MOTION TO DISMISS COUNTERCLAIM; MOTION TO STRIKE ANSWER** <br><br> Re: Dkt. Nos. 70, 72 |

BGC, Inc. filed this action against its founder and former CEO, Kimberly Bryant, in August 2022 alleging Ms. Bryant hijacked the company's websites and rerouted them to her own website following her removal by the Board of Directors a few weeks earlier. Ms. Bryant answered the complaint and separately filed a cross-complaint alleging 14 claims against BGC and 8 additional parties. (Dkt. Nos. 50, 51.[1]) BGC filed two responsive motions: (1) a motion to dismiss the counterclaim for lack of subject matter jurisdiction and for failure to state a claim; and (2) a motion to strike Ms. Bryant's Answer. (Dkt. Nos. 70; 72.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the June 29, 2023 hearing, and GRANTS BGC's motions.

**DISCUSSION**

**A. Motion to Dismiss**

BGC moves to dismiss for lack of subject matter jurisdiction, or alternatively, for failure to state a claim. The former argument is dispositive.

//

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

### 1. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting district courts are "obligated to consider sua sponte whether [they] have subject matter jurisdiction").

In her cross-complaint Ms. Bryant invokes federal question jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 3401. (Dkt. No. 51 at ¶ 19.) The only possible basis for federal question jurisdiction is Ms. Bryant's second claim: a violation of the Right to Financial Privacy Act (RFPA), 12 U.S.C. §§ 3401-3402. (*Id.* at ¶¶ 99-102.) The RFPA, Section 3402, governs government access to customer financial records maintained by a financial institution. BGC insists this claim is "too frivolous and unsubstantial to invoke subject matter jurisdiction*.*" *Balik v. City of Torrance*, 841 F. App'x 21, 22 (9th Cir. 2021) (internal citations omitted); *Bell v. Hood*, 327 U.S. 678, 682–83 (1946) ("a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."). That is, because a claim under section 3402 only arises when financial records are disclosed to the government, and Ms. Bryant's claim is based upon Wells Fargo's alleged disclosure of her financial records to BGC, the RFPA has no application here and is pled solely to invoke federal question jurisdiction. (Dkt. No. 51 at ¶ 100.)

In her opposition, Ms. Bryant concedes "RFPA's limitation" and pivots to a different theory implicitly conceding her RFPA claim was pled solely for the purpose of obtaining federal jurisdiction. (Dkt. No. 81 at 14.) Thus, the Court finds the RFPA claim is so insubstantial and frivolous that it does not confer subject matter jurisdiction.

Ms. Bryant now argues the RFPA demonstrates a "recognition that an individual holds a

1   right to financial privacy against encroachment by governmental agencies, " a right further
2   recognized in the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, "which requires financial
3   institutions to keep nonpublic personal information confidential unless they have permission to
4   disclose the information." (Dkt. No. 81 at 14-15.)  Ms. Bryant, however, has not alleged a claim
5   under Gramm-Leach-Bliley Act and concedes she cannot because it does not contain a private
6   right of action.  (*Id*. at 15.)  Instead, Ms. Bryant contends the California equivalent to the RFPA
7   and the Gramm-Leach-Bliley Act—the California Financial Information Privacy Act of 2005, Cal.
8   Fin. Code § 4052.5—provides a private right of action.  Ms. Bryant asks the Court to allow her to
9   amend her cross-complaint to include a California Financial Information Privacy Act claim and
10  find the claim sufficient to establish federal question jurisdiction because it "implicates a
11  substantial federal interest" within the purview of *Grable & Sons Metal Products, Inc. v. Darue*
12  *Engineering & Manufacturing*, 545 U.S. 308 (2005) ("*Grable*").

13        Under *Grable*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1)
14  necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal
15  court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568
16  U.S. 251, 258 (2013).  Federal jurisdiction under *Grable* exists only for a "special and small
17  category" of cases.  *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)
18  ("*Grable* emphasized it takes more than a federal element 'to open the 'arising under' door. This
19  case cannot be squeezed into the slim category *Grable* exemplifies.") (internal citations omitted).
20  Indeed, only a few cases have fallen into the "slim category" set forth in *Grable*: "(1) a series of
21  quiet-title actions from the early 1900s that involved disputes as to the interpretation and
22  application of federal law; (2) a shareholder action seeking to enjoin a Missouri corporation from
23  investing in federal bonds on the ground that the federal act pursuant to which the bonds were
24  issued was unconstitutional; and (3) a state-quiet title action claiming that property had been
25  unlawfully seized by the Internal Revenue Service (IRS) because the notice of the seizure did not
26  comply with the Internal Revenue Code." *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir.
27  2020) (cleaned up). At bottom, the question is whether "a case turns on substantial questions of
28  federal law…focus[ing] on the importance of a federal issue to the federal system as a whole." *Id*.

at 905 (cleaned up).

Ms. Bryant does not explain how either her intended claim under the California Financial Information Privacy Act of 2005 or any of her existing state law claims satisfy any of the *Grable* requirements, let alone all of them. She makes no attempt to identify the substantial question of federal law at issue nor the federal/state comity principles involved. Accordingly, her cross-complaint, and her proposed amended cross-complaint, do not establish a basis for federal question jurisdiction.

### 2. Supplemental Jurisdiction

When a federal court has original jurisdiction over a claim—such as BGC's Computer Fraud and Abuse Act claim—the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy." 28 U.S.C. § 1367(a). State claims are part of the same case or controversy as federal claims "when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1–A Agric. Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004) (citation and quotation marks omitted).

Ms. Bryant insists even if the Court finds her cross-complaint does not provide a basis for subject matter jurisdiction, the Court can nonetheless exercise supplemental jurisdiction under section 1367(a) because her state law unlawful and retaliatory termination counterclaims share a common nucleus of operative facts with BGC's federal claims. BGC counters that its claims are narrowly focused on one aspect of Ms. Bryant's post-termination conduct and have nothing to do with BGC's suspension of Ms. Bryant as the CEO, termination of her employment with BGC, and withdrawal of her access to the Wells Fargo bank accounts—the conduct underlying Ms. Bryant's counterclaims.

While Ms. Bryant's termination and ouster provide background to BGC's claims here, "the mere existence of an employment relationship between plaintiffs and defendants [is] insufficient to establish supplemental jurisdiction over Defendants' counterclaims that have nothing to do with the underlying [claims regarding ownership of the BGC domain names]." *Poehler v. Fenwick*, No. 2:15-CV-01161 JWS, 2015 WL 7299804, at *2 (D. Ariz. Nov. 19, 2015) (collecting cases).

4

Ms. Bryant's counterclaims regarding her termination go well beyond the narrow scope of BGC's claims here and involve 14 claims against 8 different individuals and entities including members of BGC's Board of Directors, BGC employees, Wells Fargo, Wells Fargo's Chief Executive Officer and President, and Wells Fargo's Senior Executive Vice President.  (Dkt. No. 51 at ¶¶ 4- 15.)  There is "little relationship between the facts necessary for [BGC] to prove [its] claims—that [Ms. Bryant wrongfully accessed and appropriated the BGC domain names and website]—and those facts necessary to prove [Ms. Bryant's] state law counterclaims."  *Ader v. SimonMed Imaging Inc*., 324 F. Supp. 3d 1045, 1051 (D. Ariz. 2018).  "Indeed, the two sets of claims overlap only insofar as each arises from [Ms. Bryant's] employment relationship with [BGC]."  *Id*.

Accordingly, because there is no common nucleus of operative facts between BGC's claims and any of Ms. Bryant's counterclaims, there is no basis for supplemental jurisdiction here.

\*\*\*

The Court thus grants BGC's motion to dismiss Ms. Bryant's cross-complaint for lack of subject matter jurisdiction.  Ms. Bryant has not established a basis for federal question jurisdiction and the Court lacks supplemental jurisdiction over her state law counterclaims under 28 U.S.C. § 1367(a).

**B. Motion to Strike**

Pursuant to Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  BGC moves to strike Ms. Bryant's Answer as failing to comply with Rule 8 and her affirmative defenses as inadequately pled.

**1. Motion to Strike Under Rule 8**

Under Rule 8(b)(1), a party's answer must "(A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."  A party may plead a general denial or specific denials; however, "[a] party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted." *See* Fed. R. Civ. Pro. 8(b)(3).  There are several issues with Ms. Bryant's Answer.

5

First, Ms. Bryant concedes her Answer responded to the original version of the complaint—not the operative Amended Complaint which added a claim and 30 paragraphs of allegations. (Dkt. No. 82 at 4, n.2.) Second, Ms. Bryant's Answer consists of a 16-page factual summary followed by 2 paragraphs under a heading "Admissions and Denials," which states in relevant part that she admits a portion of the paragraph 20 allegations, but otherwise denies the paragraph and denies the allegations in paragraphs 21-57. (Dkt. No. 50 at 18.) However, because Ms. Bryant answered the wrong version of the complaint, the paragraph 20 she purports to answer does not match paragraph 20 in the operative Amended Complaint. Further, because the Amended Complaint has 87 rather than 57 paragraphs, the Answer includes no response to these additional paragraphs. Finally, Ms. Bryant "acknowledges that [her Answer] failed to comply with the letter of Rule 8(b)(3)," but still contends her "specific narrative" responds to the substance of Plaintiff's allegations. (Dkt. No. 82 at 4.) Not so. An answer must admit the part of the allegations that are true and deny the parts that are not and "fairly respond to the substance of the allegation[s]." Fed. R. Civ. Pro. 8(b)(2)-(4). Ms. Bryant's Answer does not do so and thus must be stricken.

Accordingly, the Court grants the motion to strike the Answer with leave to file an answer to the operative Amended Complaint that complies with the specificity required by the Federal Rules of Civil Procedure.

### 2. Motion to Strike Affirmative Defenses

"A defense is insufficiently pled if it fails to give the plaintiff fair notice of the nature of the defense." *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). While the Ninth Circuit has not yet ruled on the issue, "courts in this district continue to require affirmative defenses to meet" the standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Fishman v. Tiger Nat. Gas Inc.*, No. C 17-05351 WHA, 2018 WL 4468680, at *2-3 (N.D. Cal. Sept. 18, 2018) (internal quotation marks and citation omitted); *see also Hartford Underwriters Ins. Co. v. Kraus USA, Inc.*, 313 F.R.D. 572, 574 (N.D. Cal. 2016) (collecting cases). Thus, "[w]hile a defense need not include extensive factual allegations in order to give fair notice, bare statements reciting mere legal

conclusions may not be sufficient." *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11–03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012). "Just as a plaintiff's complaint must allege enough supporting facts to nudge a legal claim across the line separating plausibility from mere possibility, a defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual bases of the defense." *Id*. (internal quotation marks and citation omitted). The bar is not high, however, and "[a] defendant need only point to the existence of some identifiable fact that if applicable ... would make the affirmative defense plausible on its face." *Ear v. Empire Collection Auths., Inc*., No. 12-1695-SC, 2012 WL 3249514, at *1 (N.D. Cal. Aug. 7, 2012) (internal quotation marks and citation omitted).

Ms. Bryant's affirmative defenses fail to satisfy even this low bar as she only lists the affirmative defense by name, but does not identify which facts support each affirmative defense nor otherwise allege a cognizable theory for each affirmative defense.

### a) Affirmative Defenses Nos. 1 and 2

BGC moves to strike Ms. Bryant's first and second affirmative defenses for fraud and unclean hands, respectively, because neither allege a factual basis and an affirmative defense of fraud must satisfy the heightened pleading requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged") (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Ms. Bryant contends her Answer's narrative statement of facts provides the degree of specificity required and her fraud affirmative defense relates to BGC's allegations regarding control and ownership of the domain names, and her unclean hands affirmative defense relates to the "concerted plan to expel her presence form BGC." (Dkt. No. 82 at 9.) But Ms. Bryant's 16-page factual statement does not provide BGC with *specific* notice of the factual basis for her affirmative defenses. To the extent Ms. Bryant contends these affirmative defenses are tethered to these two categories of allegations—the domain names and her ouster—she may amend her

1 affirmative defenses to so plead.

### b) Affirmative Defense No. 21

BGC moves to dismiss Mr. Bryant's 21st affirmative defense—failure to join an indispensable party—because among other issues, Ms. Bryant has not identified who the indispensable party is BGC failed to join. Ms. Bryant's response states:

> Plaintiff's complaint asserts that a certain John Hanawalt's services were engaged by BGC to restructure the BGC website, as was a vendor named Numbered Studios. Complaint, 30. Administrative control was thereafter transferred to Karla Tai. Answer, p. 16:21-26. In undertaking website restructuring, these three parties would have had administrative access to the website such that their role in the purported re-routing could conceivably warrant involvement in BGC's lawsuit.

(Dkt. No. 82 at 10.) To the extent Ms. Bryant suggests she could amend her affirmative defense to specify these three individuals are indispensable parties, she has not explained why in their absence the Court either "cannot accord complete relief among existing parties" or how they have an interest in this action that would be impeded by resolving the action without them or would lead to inconsistent obligations. *See* Fed. R. Civ. Pro. 19(b). That they might be percipient witnesses does not make them indispensable parties.

### c) Affirmative Defense No. 22

BGC moves to strike Ms. Bryant's 22nd affirmative defense—failure to mitigate—for failing to provide a factual basis for the defense. In response, Ms. Bryant indicates this affirmative defense relates to her allegation BGC has administrative control over the BGC website and thus had the means to mitigate its damages when the domain names were rerouted. (Dkt. No. 82 at 10.) Ms. Bryant is granted leave to amend her affirmative defense to plead this factual basis.

### d) Affirmative Defenses Nos. 11, 12, 13, 16, 17, 19, 20, 25, 28, 29, 32, and 33

BGC moves to strike these affirmative defenses as inadequately pled. In response, Ms. Bryant contends these affirmative defenses "wholeheartedly stem from the 'common nucleus of operative facts' with respect to Plaintiff's claims." (Dkt. No. 82 at 11.) This statement does not put BGC on fair notice of factual basis for these 12 affirmative defenses. *See Wyshak*, 607 F.2d at

8

827.

e) **Remaining Affirmative Defenses**

Ms. Bryant offers no response as to BGC's motion to strike affirmative defenses Nos. 3, 10, 14, 15, 23, 24, 26, 27, 30, and 31. It is unclear if this was an oversight or a concession these affirmative defenses should be struck. If Ms. Bryant has a good faith belief there is a factual basis for these affirmative defenses, she may plead them in her amended answer.

# CONCLUSION

For the reasons stated above, BGC's motion to dismiss Ms. Bryant's Cross-complaint is GRANTED for lack of subject matter jurisdiction with leave to amend consistent with Rule 11 and its motion to strike her Answer is GRANTED with leave to amend. Ms. Bryant's amended answer is due July 7, 2023.

This Order disposes of Docket Nos. 70 and 71.

**IT IS SO ORDERED.**

Dated: June 21, 2023

JACQUELINE SCOTT CORLEY
United States District Judge